**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Wheeler,<br><br>           Plaintiff,<br><br>v.<br><br>Trans Union LLC, Equifax Information Services LLC, and Healthcare Collections-I LLC,<br><br>           Defendants. | No. CV-17-03328-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendant Trans Union, LLC's ("Trans Union") motion to dismiss. (Doc. 21.) Plaintiff Michael Wheeler ("Wheeler") has responded, (Doc. 24), and Trans Union has replied, (Doc. 25.)

**I.  Background**

Wheeler filed this suit in September of 2017, alleging that Trans Union, Equifax, and Healthcare Collections-I, L.L.C. ("Healthcare Collections") violated the Fair Credit Reporting Act ("FCRA"). (Doc. 1.) Trans Union and Equifax are consumer reporting agencies ("CRAs") who "receive data about consumers from a wide variety of sources" known as furnishers. (Doc. 21 at 1.) Healthcare Collections is a furnisher. (*Id.* at 1–2.)

Specifically, Wheeler claims that Healthcare Collections reported its trade line ("Errant Trade Line") on "Wheeler's Trans Union and Equifax credit files with dispute language." (Doc. 1 at 3.) Because Wheeler no longer disputed the Errant Trade Line, he desired to have the dispute language removed. (*Id.*) Accordingly, on July 14, 2017,

Wheeler transmitted letters to Trans Union and Equifax requesting that they delete the dispute language from the Errant Trade Line. (*Id.* at 4.) Wheeler claims that Trans Union and Equifax forwarded this information to Healthcare Collections. (*Id.*) On September 6, Wheeler obtained a credit report from Trans Union that still contained the dispute language. (*Id.*) As a result, Wheeler claims that he has: (1) "been forced to refrain from applying for new credit or more favorable terms on existing credit lines"; and (2) "experienced undue stress and anxiety due to [Trans Union's] failure to correct errors in his credit file or improve his financial situation by obtaining new or more favorable credit terms as a result of [Trans Union's] violations of the FCRA." (*Id.*) As relevant to this Order, Wheeler brought claims against Trans Union for allegedly engaging in negligent and willful violation of the FCRA. (*Id.* at 7–9.) Trans Union moved to dismiss the Complaint, arguing that: (1) Wheeler lacked standing to bring his FCRA claims, divesting this Court of subject-matter jurisdiction; and (2) Wheeler failed to state claim upon which relief can be granted. (Doc. 21.)

## II. Analysis

Trans Union moves to dismiss Wheeler's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6). Because subject-matter jurisdiction is a condition precedent to this Court's exercise of binding adjudicatory power, the Court must be satisfied as to its presence before the 12(b)(6) argument can be considered. *United States v. Jacobo Castillo*, 496 F.3d 947, 951 (9th Cir. 2007) (en banc); *see* U.S. Const. art. III; Restatement (Second) of Judgements § 1 (Am. Law. Inst. 1982).

### A. Subject-Matter Jurisdiction

Article III provides that federal courts may only exercise judicial power in the context of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. For there to be a case or controversy, the plaintiff must have standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("*Spokeo II*").

For a plaintiff to have standing, said plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Trans Union's only challenge is to whether Wheeler has suffered an injury in fact, implicitly conceding the traceability and redressability elements of standing. (Doc. 21 at 10–11.) Accordingly, Wheeler bears the burden of "clearly . . . alleg[ing] facts demonstrating" that he has suffered such an injury. *Spokeo II*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The Supreme Court has recently emphasized that the concreteness and particularization requirements are distinct concepts that must each be established for standing to exist. *See Spokeo II*, 136 S. Ct. at 1548. A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

A concrete injury "must be '*de facto*'; that is, it must actually exist." *Spokeo II*, 136 S. Ct. at 1548 (quoting Black's Law Dictionary 479 (9th ed. 2009)). Both tangible and intangible harms can be concrete. *Id.* Congress may identify and elevate an intangible harm to the level of a *de facto* injury; however, allegations of a "bare procedural violation, divorced from any concrete harm" do not satisfy the injury-in-fact requirement of Article III. *Id.* at 1549. In determining whether violating a statutory provision satisfies the injury-in-fact requirement, a court asks: "(1) whether the statutory provisions at issue were established to protect [a plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) ("*Spokeo III*").

By not removing the dispute language from the Errant Trade Line, Wheeler

alleges that Trans Union violated the FCRA by negligently and willfully failing to: (1) "maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information" Trans Union "reported to one or more third parties pertaining to" Wheeler; and (2) "conduct a reasonable reinvestigation" after receiving Wheeler's "consumer dispute to the Errant Trade Line." (Doc. 1 at 7–9.) Wheeler claims that these procedural violations caused "actual damages, mental anguish and suffering, humiliation, . . . embarrassment" and forced him "to refrain from applying for new credit or more favorable terms on existing credit lines." (*Id.* at 4, 7–9.)

Initially, Wheeler's alleged harm is particularized, because Wheeler alleges that Trans Union violated "*his* statutory rights" and that this violation upset Wheeler's "personal interests in the handling of his credit information." *See Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014) ("*Spokeo I*"), *vacated*, *Spokeo II*, 136 S. Ct. at 1550; *Spokeo III*, 867 F.3d at 1111 (reaffirming *Spokeo I*'s particularization finding).

Furthermore, Wheeler's harm satisfies both concreteness requirements. First, the FCRA procedures implicated by Wheeler's complaint "were crafted to protect consumers' . . . concrete interest in accurate credit reporting about themselves." *Spokeo III*, 867 F.3d at 1115. Second, Trans Union's alleged procedural violations have caused Wheeler harm. Wheeler claims that Trans Union disseminated inaccurate consumer information by continuing to report that Wheeler disputed the Healthcare Collections trade line, which "clearly implicates, at least in some way, [Wheeler's] concrete interests in truthful credit reporting." *Id.* at 1116. Additionally, the "nature of the specific alleged reporting inaccurac[y]" here is not "trivial or meaningless," but rather is within the realm of interests that the FCRA sought to protect, because users of Wheeler's consumer report may find it important that Wheeler continues to dispute a particular trade line in determining whether to extend new credit lines or modify those that already exist. *Compare id.* 1116–17 (holding that the FCRA sought to ensure accurate reporting of information regarding "age, marital status, educational background, and employment history" because this information "is the type that may be important to [those] . . . making

use of a consumer report"), *with Spokeo II*, 136 S. Ct. at 1550 (stating that the FCRA was not meant to ensure accurate reporting of zip codes). Because Wheeler appropriately fears that he cannot obtain new or modified credit lines, he alleges that he has suffered psychological, emotional, and financial harm, and as such, manifests a concrete injury.

Accordingly, Wheeler has standing to bring his FCRA claims.

## B. Failure to State a Claim

Trans Union moves to dismiss the entirety of the complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To have facial plausibility, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This analysis is "context-specific" and is driven by "judicial experience and common sense." *Id.* at 679.

A court must "accept as true all allegations contained in a complaint." *Id.* at 678. This same presumption, however, is not extended to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Trans Union moves to dismiss Wheeler's Section 1681e(b), Section 1681i, and willfulness claims.

### 1. Section 1681e(b)

15 U.S.C. § 1681e(b) provides that CRAs "shall follow reasonable procedures to assure maximum possible accuracy of information" in preparing consumer reports. To make out a prima facie case for violation of Section 1681e(b), "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citation omitted). "On a motion to dismiss, the Court need determine

only whether [Wheeler] has made a prima facie showing." *Baker v. Trans Union LLC*, No. CV-07-8032-PCT-JAT, 2008 WL 4838714, at *5 (D. Ariz. Nov. 6, 2008). Wheeler made such a showing by claiming that Trans Union prepared a consumer report stating that Wheeler disputed the Healthcare Collections trade line, even after Trans Union became aware that Wheeler no longer disputed the trade line. (Doc. 1 at 7, 10.) Trans Union sets forth four grounds as to why this showing is insufficient.

First, Trans Union argues that Wheeler did not "sufficiently allege and prove the procedures followed by Trans Union were unreasonable." (Doc. 21 at 4.) Trans Union reasons that one cannot infer that its procedures were unreasonable by its inaccurate reporting, because the FCRA puts the responsibility on making such corrections on furnishers, rather than CRAs. (Doc. 21 at 4–5.) Specifically, Trans Union points to 15 U.S.C. § 1681s-2(a)(2), which requires furnishers to correct and update information when it determines that information it furnished "is not complete or accurate," and to 15 U.S.C. § 1681s-2(a)(3), which requires that furnishers notify CRAs of disputes by consumers. Because a CRA does not have the responsibility to ensure accuracy in such cases, Trans Union argues, the fact that there was an inaccuracy does not allow one to infer that Trans Union's procedures were unreasonable.

Trans Union's cited authorities do not set forth the standard for resolving this issue on a motion to dismiss and thus provide little persuasive value. *See* (Doc. 21 at 4 (first citing *Guimond*, 45 F.3d at 1333 (summary judgment); then citing *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986) (directed verdict, judgment notwithstanding the verdict, and new trial)); *see also Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080 (D. Or. 2007) (summary judgment).[1] Even assuming Trans Union's legal standard appropriately applies to a motion to dismiss, the FCRA expressly contemplates that disputes may be made directly from consumers to CRAs; therefore, the statutory scheme does not put the entire burden on furnishers to manage disputes. *See* 15 U.S.C. § 1681i(a)(1)(A)

---

[1] Trans Union attributes quoted language from *Saenz* to *Guimond*. *See* (Doc. 21 at 4–5.)

(triggering CRA duties when, *inter alia*, "the consumer notifies the agency [of a dispute] directly."). Trans Union contends, without citing any authority, that "disputes from consumers are irrelevant to § 1681e(b) claims." (Doc. 25 at 2.) Section 1681e(b), however, mandates that CRAs use "reasonable procedures to assure maximum possible accuracy of" consumer information, which by its plain text seems to bar unreasonable procedures that result in reporting that a consumer disputed a trade line when that was no longer accurate. Thus, Wheeler has stated a claim based on his alleged facts that Trans Union used unreasonable procedures.

Second, Trans Union argues that Wheeler did not sufficiently allege injury or recoverable damages, because Wheeler's damages are vague. (Doc. 21 at 5–6.) Wheeler, however, specifically claims that he "has been forced to refrain from applying for new credit or more favorable terms on existing lines" and has "experienced undue stress and anxiety due to Defendants' failure to correct errors in his credit file or improve his financial situation by obtaining new or more favorable credit terms." (Doc. 1 at 4.) The FCRA permits "recovery for emotional distress," *Guimond*, 45 F.3d at 1333, and Wheeler has alleged such damages. Accordingly, Wheeler's claim for damages is sufficiently alleged to survive a motion to dismiss.

Third, Trans Union argues that Wheeler did not sufficiently plead that any legally cognizable damages he suffered were caused by Trans Union. (Doc. 21 at 6–7.) Initially, Trans Union claims that Wheeler impermissibly lumped all Defendants together. (*Id.*) The Complaint specifically alleges, however, that Trans Union's breach of the FCRA caused "Mr. Wheeler to suffer actual damages, mental anguish and suffering, humiliation, and embarrassment." (Doc. 1 at 8–9.)

Trans Union further argues that to the extent that Wheeler is claiming injuries in the form of refraining from either applying for credit or pursuing some other opportunity, such claims are too speculative to state a claim under the FCRA.[2] (Doc. 21 at 6–7.) A

---

[2] Trans Union also argues that "to the extent Plaintiff claims that his credit score somehow suffered, a lower credit score on its own does not constitute valid FCRA damages." (Doc. 21 at 6.) It is not apparent from the Complaint that Wheeler does claim

plaintiff can seek, *inter alia*, "actual damages" for negligent and willful violations of the FCRA. 15 U.S.C. §§ 1681n, 1681o. The statute does not define this term. While the Ninth Circuit has not defined the scope of actual damages in the context of the FCRA, it has held that the FCRA should be interpreted liberally, with an eye to "protect consumers from the transmission of inaccurate information about them . . . and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible matter." *Guimond*, 45 F.3d 1329. Given this broad interpretation, the Court finds Wheeler has alleged sufficiently particular actual damages to state a claim.[3]

### 2. Section 1681i

15 U.S.C. § 1681i provides, *inter alia*, that a CRA must conduct a reasonable reinvestigation where the accuracy of a consumer report "is disputed by the consumer and the consumer notifies the agency directly." Wheeler contends that Trans Union negligently and willfully failed to perform a reasonable reinvestigation after Wheeler informed Trans Union that he no longer disputed the Errant Trade Line. (Doc. 1 at 7, 9.) Trans Union argues that Wheeler's Section 1681i claim is deficient in two regards.

First, Trans Union argues that because it reported Wheeler's dispute of the Errant Trade Line to Healthcare Collections, who failed to remove the dispute language, it conducted a reasonable reinvestigation. (Doc. 21 at 7–8.) In making this argument, Trans Union relies on authority stating that "the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed *debt* than the CRA does on reinvestigation." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) (emphasis added). While this is true, Wheeler did not ask Trans Union to reinvestigate the validity of the underlying debt, but rather informed Trans Union that he

---

such damages, and Wheeler does not oppose this point in his Response; accordingly, the Court finds that Wheeler is not pursuing damages on the theory that Trans Union's alleged FCRA violations lowered his credit score.

[3] This holding is without prejudice to Trans Union raising this issue at an appropriate time if ultimately Wheeler does not have evidence to prove these damages.

- 8 -

no longer disputed the debt. It is not clear what information Trans Union believes Healthcare Collections could have obtained on reinvestigation that Trans Union did not obtain directly from Wheeler, given that the statutory scheme expressly contemplates that consumer disputes can be handled directly with a CRA. *See* 15 U.S.C. § 1681i. Accordingly, Wheeler sufficiently alleges that Trans Union performed an unreasonable reinvestigation.

Second, Trans Union argues that Wheeler did not sufficiently allege causation or damages, incorporating by reference its same arguments made in the Section 1681e(b) context. (Doc. 21 at 8.) For the same reasons articulated above, the Court finds that Wheeler sufficiently pleads causation and damages.

### 3. Willfulness

Trans Union contends that Wheeler's willfulness claims should be dismissed as conclusory. (Doc. 21 at 9–10.) Willful violations must be knowing or reckless. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007). To be reckless, a CRA must interpret the FCRA in a manner that presents "a risk of violating the law" that is "substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

Wheeler claims that "Trans Union willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information that it reported" and that "Trans Union willfully failed to conduct a reasonable reinvestigation" after Wheeler made clear that he no longer disputed the Healthcare Collection trade line. (Doc. 7–9.) A reasonable inference from these claims, which the Court is required to make in interpreting a complaint on a motion to dismiss, is that Trans Union's interpretation of the FCRA was reckless. Here, Trans Union does not disclose what its interpretation of the FCRA was at the time it allegedly violated the statute; accordingly, it is inappropriate to definitively resolve this issue on a motion to dismiss. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1282 (11th Cir. 2017) (affirming dismissal of a willful FCRA claim, and distinguishing from a case where dismissal was inappropriate because the CRA in that case "did not argue that it had adopted an objectively reasonable

interpretation of the Act.").

### C. Conclusion

Accordingly,

**IT IS ORDERED** that Trans Union, LLC's motion is **DENIED**.

Dated this 29th day of May, 2018.

_____
James A. Teilborg
Senior United States District Judge